947 F.2d 948
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James J. MULLINS, et al., Plaintiffs-Appellants,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee.
 No. 91-1768.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 15, 1991.
Decided Oct. 25, 1991.
 
 1
 Before CUMMINGS, WOOD, JR. and EASTERBROOK, Circuit Judge
 
 Order
 
 2
 United States Fidelity and Guaranty Co. (USF & G) issued bonds guaranteeing performance by Southern Concrete Floor Co. of its construction contracts. In 1983 Southern Concrete became unable to satisfy obligations to its suppliers and subcontractors. USF & G stepped in to pay the claims. It was entitled under its master agreement with Southern Concrete to any payments due from the owners of the projects, and it was also entitled to indemnity from Southern Concrete and its owners for any net losses. To facilitate collection from the owners, USF & G demanded that Southern Concrete assign it all sums owed on the projects. Southern Concrete did so. Each document recites the assignment in one paragraph and in another names USF & G as Southern Concrete's agent for collection.
 
 
 3
 USF & G paid all claims and collected what it could. If USF & G were to realize a profit on one project (by collecting more from the owner than it paid the suppliers and subcontractors), it could keep the excess in order to satisfy its claim under the indemnity agreement (not to mention principles of subrogation) for the remaining projects. In 1986 Southern Concrete and its principals approached USF & G about a settlement. USF & G was then about $300,000 in the hole, and accounts remained open on three projects. Southern Concrete asserted that unless its liability to USF & G could be fixed, it (and its principals) would land in bankruptcy. The parties struck a bargain: in exchange for a $100,000 note, USF & G released all further claims against Southern Concrete and its principals.
 
 
 4
 After signing that agreement, USF & G received payments from the owners of two projects. The one remaining in dispute is from the Akin Water District. A supplier of pipe filed suit against the District and Southern Concrete seeking payment; USF & G defended and counterclaimed on the ground that the pipe was defective. In the settlement the District paid about $95,000 to the supplier and $65,000 to USF & G; the supplier relinquished all claims against Southern Concrete and USF & G. As USF & G made no payments on this job, it realized a profit of $37,000 (after legal expenses of $28,000). Contending that it should receive the entire $65,000, Southern Concrete filed this diversity suit. USF & G counterclaimed for the balance due on the note ($42,000 plus interest).
 
 
 5
 After a bench trial, the district judge found that the parties intended the assignments in 1983 to be absolute and did not intend the 1986 agreement to undo the effects of those assignments. These decisions are not clearly erroneous. The first paragraph of each assignment is unconditional. If the agency language makes the instruments look less like absolute assignments than their first paragraphs imply, it also creates a triable issue, which the district court was entitled to resolve as it did. (Southern Concrete's argument that the assignments are invalid because not supported by fresh consideration comes too late, for it was not presented in the district court.)
 
 
 6
 Nothing in the 1986 contract mentions the assignments or implies that USF & G was to pay Southern Concrete a positive balance on a given project even though the net balance between the parties left USF & G with a loss. All agree that before the 1986 contract USF & G could offset losses on some projects against gains on others (the indemnity clause calls for no less). The 1986 agreement is read most naturally as saying that Southern Concrete will make up $100,000 of the net loss with certainty, in exchange for which USF & G will not pursue it for any greater loss. Nary a clue in the 1986 agreement implies that the parties contemplated the possibility that USF & G would pay Southern Concrete one red cent while it remained a net loser on the bonds. The district court found, after listening to the evidence, that the parties' intent was in accord with the purport of their words.
 
 
 7
 AFFIRMED.